**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ZAKIAH CHANTE FREEMAN ADMINISTRATRIX OF THE ESTATE OF ZAFIQ A. FREEMAN | : : : : : : : : : : : | CIVIL ACTION<br><br>No. 22-1196 |
| v. | | |
| THE GEO GROUP, INC., ET. AL. | | |

## ORDER

AND NOW, this _____ day of _____, 2022 upon consideration of Defendants, The GEO Group, Inc., GEO Secure Services, LLC., GEO Operations, Inc., GEO Correctional Holdings, Inc., Community Education Centers, Inc., GEO Reentry Services, LLC, and David Byrne's Motion to Dismiss, and any response thereto, it is hereby ORDERED and DECREED that the Motion is GRANTED, and Plaintiff's Complaint is hereby dismissed **WITH PREJUDICE**.

BY THE COURT:

_____
J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ZAKIAH CHANTE FREEMAN<br>ADMINISTRATRIX OF THE ESTATE<br>OF ZAFIQ A. FREEMAN<br><br>v.<br><br>THE GEO GROUP, INC., ET. AL. | CIVIL ACTION<br><br>No. 22-1196 |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants, The GEO Group, Inc., GEO Secure Services, LLC., GEO Operations, Inc., GEO Correctional Holdings, Inc., Community Education Centers, Inc., GEO Reentry Services, LLC, and David Byrne, by and through their counsel, Robert DiOrio, Esquire and Matthew H. Fry, Esquire, hereby set forth this Motion to Dismiss and in support thereof, avers as follows:

1. Plaintiff commenced this civil action by filing a writ of summons in the Court of Common Pleas of Philadelphia County, Pennsylvania, on July 29, 2021.

2. Thereafter, Plaintiff filed the first pleading, a complaint, on March 9, 2022.

3. Defendants were served with the Complaint on March 9, 2022, and Defendants filed a Notice of Removal with 30 days of first receipt of the Complaint. (Document 1).

4. Plaintiff, as the administratrix of the Estate of Zafiq A. Freeman, claims negligence in connection with Mr. Freeman's suicide.

5. Curiously, there is no allegations that the Defendants knew or should have known that the decedent was acting suicidal that day. Plaintiff also does not claim that they did not do regular tours or otherwise not check on Mr. Freeman. Rather, they claim that because he may

have covered the window to his cell, that this must have meant something was wrong, without any context or knowledge that anything was inappropriate. (Document 1, pp. 19-23, ¶¶44-72).

6. Negligence relating to a person's suicide is very limited in Pennsylvania, as Plaintiff must show a duty to prevent suicide and a clear causal connection between the acts of the alleged tortfeasor and the suicide.

7. The law is clear that unless a prison official has knowledge of an inmates suicidal behavior, there can be no claim of negligence.

8. Plaintiff's Complaint has set forth no evidence in this case showing "clear showing of a duty" and "a direct causal connection" to prove liability against the Defendants under the theories alleged in the Complaint.

9. Without any claims that any staff knew that the decedent was suicidal, Plaintiff has failed to state a claim and dismissal of the complaint is appropriate.

10. In the alternative, Defendants seek to strike paragraphs 19-32 under Rule 12(f) as immaterial, impertinent, and scandalous.

WHEREFORE, the Defendants respectfully request this Honorable Court to grant their Motion to Dismiss and enter the attached form of Order.

          Respectfully submitted:
          **DiORIO & SERENI, LLP**

Date: <u>April 28, 2022</u>    **BY:**    <u>/s/ *Robert M. DiOrio*</u>
          **ROBERT M. DIORIO, ESQ.**
          Attorney ID No. 17838

          <u>/s/ *Matthew H. Fry*</u>
          **MATTHEW H. FRY, ESQ.**
          Attorney ID No. 83131
          21 West Front Street
          P.O. Box 1789
          Media, PA 19063

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZAKIAH CHANTE FREEMAN ADMINISTRATRIX OF THE ESTATE OF ZAFIQ A. FREEMAN | : : : : CIVIL ACTION : v. : No. 22-1196 : THE GEO GROUP, INC., ET. AL. : : : |

**DEFENDANTS MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants, The GEO Group, Inc., GEO Secure Services, LLC., GEO Operations, Inc., , GEO Correctional Holdings, Inc., Community Education Centers, Inc., GEO Reentry Services, LLC, and David Byrne, by and through their counsel, Robert DiOrio, Esquire and Matthew H. Fry, Esquire, hereby set forth this memorandum of law in support of Defendants' Motion to Dismiss.

**I.  FACTUAL BACKGROUND**

Plaintiff commenced this civil action by filing a writ of summons in the Court of Common Pleas of Philadelphia County, Pennsylvania, on July 29, 2021. Thereafter, Plaintiff filed the first pleading, a complaint, on March 9, 2022. Defendants were served with the Complaint on March 9, 2022, and Defendants filed a Notice of Removal with 30 days of first receipt of the Complaint. (Document 1).

Plaintiff, as the administratrix of the Estate of Zafiq A. Freeman, claims negligence in connection with Mr. Freeman's suicide. Curiously, there is no allegations that the Defendants knew or should have known that the decedent was acting suicidal that day or in the days or weeks prior to this incident. Plaintiff's also make no claim that Defendants did not do regular

tours or otherwise not check on Mr. Freeman. In fact, they admit that upon entry to the prison, there was no mention of the decedent being suicidal or having any recent suicide attempts. (Document 1, p. 20, ¶46). Rather, they claim that because he may have covered the window to his cell, that this must have meant something was wrong, without any context or knowledge that anything was inappropriate. (Document 1, pp. 19-23, ¶¶44-72).

## II.   LEGAL ARGUMENT

### A.   STANDARD OF REVIEW

#### 1.   Motion to Dismiss Pursuant to FRCP 12(b)(6).

Following the Supreme Court decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009), pleadings standards in federal civil rights actions have shifted from simple notice pleading to a more heightened from of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a Motion to Dismiss under F.R.C.P. 12(b)(6). *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). *See, Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008).

Therefore, following *Twombly* and *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The court must accept all of the complaint's well-pleaded facts as true but may disregard legal conclusions. *Iqbal*, at 1950. Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* In other words, a complaint must do more than allege an entitlement to relief. A complaint has to "show" such an entitlement with facts. *Id. See, Phillips*, 515 F.3d at 234-35. As the Supreme Court instructed, "[w]here the well-pleaded facts do not permit

the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal*, at 1950.

### A. Plaintiff Fails To State A Claim Against The Defendants As A Matter Of Law.

Plaintiff's sole factual claim that Defendants should have seen a covering over Plaintiff's cell window and that by itself should have made it known that a suicide attempt was about to occur. This patently incorrect statement is insufficient as a matter of law, as there is no connection between a window covering and suicide as windows are covered for all sorts of reasons by inmates. Furthermore, with a higher standard being applicable to negligence claims made in cases where suicide is alleged, Plaintiff fails to meet that standard. Therefore, Plaintiff's claims should be dismissed as to Answering Defendants with prejudice.

Negligence relating to a person's suicide is very limited in Pennsylvania, as Plaintiff must show a duty to prevent suicide and a clear causal connection between the acts of the alleged tortfeasor and the suicide. There must be evidence that correctional officers knew of suicidal thoughts or actions and failed to respond to them.

> Generally, suicide has not been recognized as a legitimate basis for recovery in wrongful death cases. This is so because suicide constitutes an independent intervening act so extraordinary as not to have been reasonably foreseeable by the original tortfeasor. *See Bleman v. Gold,* 431 Pa. 348, 246 A.2d 376 (1968); *Mike v. Borough of Aliquippa,* 279 Pa.Super. 382, 421 A.2d 251 (1980). *See also* Annot., 41 A.L.R.4th 351, 352 (1985); 11 A.L.R.2d 751, 757 (1950); W. Prosser, *Law of Torts* § 44, at 280-81 (4th ed. 1971). There are, however, limited exceptions to this rule. For example, Pennsylvania has recognized suicide as a legitimate basis for wrongful death claims involving hospitals, mental health institutions and mental health professionals, where there is a custodial relationship and the defendant has a recognized duty of care towards the decedent. *See Simmons v. Saint Clair Memorial Hospital,* 332 Pa.Super. 444, 481 A.2d 870 (1984); *Smith v. United States,* 437 F.Supp. 1004 (E.D.Pa.1977). In other cases, where the defendant was not associated with a hospital or mental health institution, courts have required both a clear showing of a duty to prevent

>the decedent's suicide and a direct causal connection between the alleged negligence and the suicide. *See Malloy v. Girard Bank,* 292 Pa.Super. 34, 436 A.2d 991 (1981); *Freedman v. City of Allentown,* 651 F.Supp. 1046 (E.D.Pa.1987).

*McPeake v. Cannon,* 381 Pa. Super. 227, 230-231, 553 A.2d 439, 440-441 (1989) (Lawsuit was dismissed against attorney who represented the decedent who committed suicide, holding that, even if legal malpractice occurred, attorney had no duty to prevent client's suicide after guilty verdict). Defendants could find no law in Pennsylvania that permitted a negligence claim against a prison or employees of a prison, so it can only be presumed that Plaintiff is attempting to set forth new law with this lawsuit.[1] *See e.g. Carroll v. County of York,* 496 Pa. 363, 437 A.2d 394 (Pa. 1981) (Claims of negligence dismissed in connection with suicide of decedent who was a resident of a detention home).

In Florida, in a case where an inmate committed suicide and a claim of negligence was filed against the private prison operator, the Court held that Plaintiff has to provide evidence, at the time of the suicide, the decedent's behavior was clearly suicidal and the officers were aware of such behavior. *See Timson v. Juvenile Jail Facility Mgmt,* 355 F.App's 283 (11th Cir. 2009). (Because there was no such evidence that the inmate was suicidal, even delayed checks of his cell were not considered enough to present the case to a jury, and summary judgment was entered.) Thus, the failure to provide any evidence of suicidal behavior that was known to correctional officers required the entry of summary judgment. Thus, the lack of any allegation that officers knew of suicidal behavior fails to state a claim for negligent suicide.

---

[1] While there are many cases in Pennsylvania involving civil rights and constitutional claims related to injuries and deaths that occur in a prison environment, Plaintiff has waived any such claims and is only pursuing a claim for wrongful death and survival in connection with her claims for negligence and negligent supervision.

Furthermore, to the liable for suicide would mean that the allegedly negligent defendant must have a clear duty to prevent the suicide of the decedent and be a direct cause of the incident that resulted in the death of the decedent. As can be seen from the Complaint, an alleged covered window while the cell doors were open for recreation is insufficient to show that any of the Defendants had knowledge of suicidal behavior of the inmate and would never be sufficient to state a claim for negligence under Pennsylvania law.

If the Court were to entertain a claim of negligence in connection with the decedent's suicide, the standard to follow would more or less be the same as the constitutional requirements for deliberate indifference, since this is the constitutional standard that sets forth a duty to all pretrial detainees in secure facilities such as jails. The constitutional requirements of deliberate indifference are essentially the same of the heightened standard provided by the Pennsylvania Courts, and is instructive to the instant case.

The Federal Courts have stated the standard for deliberate indifference relating to a suicide in a correctional facility in the case of *Woloszyn v. County of Lawrence,* 396 F.3d 314 (2005) stating the law as follows:

> We first examined liability under § 1983 for such suicides in *Colburn v. Upper Darby Township,* 838 F.2d 663 (3d Cir.1988) ("*Colburn I*" ). There, we held that "if [custodial] officials know or should know of the particular vulnerability to suicide of an inmate, then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability." *Id.* at 669. We later elaborated upon that standard in *Colburn v. Upper Darby Township,* 946 F.2d 1017 (3d Cir.1991) ("*Colburn II*" ), where we wrote that
>
>> a plaintiff in a prison suicide case has the burden of establishing three elements: (1) the detainee had a "particular vulnerability to suicide," (2) the custodial

>officer or officers knew or should have known of that vulnerability, and (3) those officers "acted with reckless indifference" to the detainee's particular vulnerability.

*Colburn II,* 946 F.2d at 1023.

In *Colburn II,* we explained that *Colburn I* rested primarily upon the Supreme Court's decision in *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). *Estelle* involved an Eighth Amendment claim arising from allegations of inadequate medical care. *Colburn II,* 946 F.2d at 1023. We noted in *Colburn II* that the Supreme Court held in *Estelle,* that "prison officials violate the Eighth Amendment's proscription of cruel and unusual punishment when they exhibit 'deliberate indifference to serious medical needs of prisoners.' " *Colburn II,* at 1023. (citing *Estelle,* 429 U.S. at 104, 97 S.Ct. 285). The *Estelle* standard " 'requires deliberate indifference on the part of prison officials and [that] the prisoner's medical needs ... be serious.' " *Colburn II,* 946 F.2d at 1023 (quoting *Monmouth County Correctional Inst. Inmates v. Lanzaro,* 834 F.2d 326 (3d Cir.1987)).

The detainee's condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death. Moreover, the condition must be one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Colburn II,* 946 F.2d at 1023 (citation and internal quotations omitted).

A particular vulnerability to suicide represents a serious medical need. *Colburn II*, 946 F.2d at 1023. "The requirement of a 'particular vulnerability to suicide' speaks to the degree of risk inherent in the detainee's condition." *Colburn II,* 946 F.2d at 1024. "[T]here must be a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur." *Id.* (citations omitted).

However, "[e]ven where a strong likelihood of suicide exists, it must be shown that the custodial officials 'knew or should have known' of that strong likelihood." *Colburn II,* 946 F.2d at 1024. "[I]t is not necessary that the custodian have a subjective appreciation of the detainee's 'particular vulnerability.'" *Id.* at 1024–25. "Nevertheless, there can be no reckless or deliberate indifference to that risk unless there is something more culpable on the part of the officials than a

negligent failure to recognize the high risk of suicide." *Id.* at 1025. Therefore, the "should have known" element does not refer to a failure to note a risk that would be perceived with the use of ordinary prudence. It connotes something more than a negligent failure to appreciate the risk of suicide presented by a particular detainee, though something less than subjective appreciation of that risk. The strong likelihood of suicide must be so obvious that a lay person would easily recognize the necessity for preventative action; the risk of self-inflicted injury must not only be great, but also sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges.

*Id.* (citation and internal quotations omitted).

"[N]either the due process clause with its focus on arbitrariness and abuse of power, nor the Eighth Amendment with its focus on the unnecessary and wanton infliction of pain, imposes liability for a negligent failure to protect a detainee from self-inflicted injury." 946 F.2d at 1024. We referred to that level of culpability as "reckless indifference" in *Colburn I.* 838 F.2d at 669. In *Williams v. Borough of West Chester,* 891 F.2d 458, 465 (3d Cir.1989), a case decided after *Colburn I* but before *Colburn II,* we referred to the heightened culpability that is required as "deliberate indifference." However, we did not elaborate upon those terms in either case. It was not necessary to elaborate upon either term in *Colburn II.* Instead, we simply said that "a level of culpability higher than a negligent failure to protect from self-inflicted harm is required and ... this requirement is relevant to an evaluation of the first two *Colburn I* elements as well as the third." 946 F.2d at 1024.

The phrase, "deliberate indifference" first appeared in *Estelle v. Gamble,* 429 U.S. at 104, 97 S.Ct. 285. However, the Court did not define the term with precision. Rather, the Court explained that it was "a state of mind more blameworthy than negligence." *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Court did more precisely define the phrase in *Farmer v. Brennan.* However, there, the Court was referring to the degree of culpability that would support liability under the Eighth Amendment. The Court explained:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts

> from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

511 U.S. at 837, 114 S.Ct. 1970.

In *Beers–Capitol v. Whetzel,* 256 F.3d 120 (3d Cir.2001), we placed the following gloss on *Farmer:*

> To be liable on a deliberate indifference claim, a ... prison official must both know of and disregard an excessive risk to inmate health or safety. The ... element of deliberate indifference is subjective, not objective ... meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware. However, subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk. Finally, a defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring.

256 F.3d at 133 (citations, internal quotations and brackets omitted).

*Farmer* defined "deliberate indifference" in the context of the claim of a convicted prisoner under the Eighth Amendment. It does not, therefore, directly control our analysis here because, as we have explained, Woloszyn's claim arises under the Due Process Clause of the Fourteenth Amendment. Nevertheless, because our § 1983 jurisprudence in custodial suicides borrows the term "deliberate indifference" from Eighth Amendment jurisprudence, "deliberate indifference" may be equivalent to the "should have known" element required for § 1983 liability under the Fourteenth Amendment pursuant to *Colburn I* and *II.* However, we need not attempt to reconcile those two phrases here because there is no evidence on this record that Woloszyn had a particular vulnerability to suicide. Accordingly, his wife can not establish the first element under *Colburn I* and *II.*

*Id.* at 320-321.

The "vulnerability to suicide" standard would also arguably apply as to any claim for negligence since this is the expected duty of a correctional officer to prevent a suicide and because Pennsylvania law requires a higher standard to find negligence including a "clear duty" to prevent a suicide and "direct cause" between the prison staff's actions and the suicide in finding such a claim to exist. In fact, the Pennsylvania Superior Court in *McPeake v. Cannon,* 381 Pa. Super. 227, 230-231, 553 A.2d 439, 440-441 (1989) specifically identified deliberate indifference cases as being part of the exception to a complete bar to negligent suicide claims. *Id.* The vulnerability to suicide must also be clear and obvious since a correctional officer is not a mental health professional and has no knowledge of an inmate's medical or mental health history.

In this instance, the Complaint clearly shows that the correctional staff had no knowledge whatsoever of any conduct or statements by the decedent or anyone else showing any suicidal behavior or a vulnerability to suicide. (Document 1, pp. 19-23, ¶¶44-72). Covering a window, which is something done by inmates hundreds of times a day without incident, is not any indicator of suicide or vulnerability to suicide. There is also no indication in the Complaint that any officer saw this behavior and intentionally ignored it. Therefore, the Complaint fails to state a claim and should be dismissed.

    **B.**    **Plaintiff's Improper Recitation Of Past Suicides At The Prison Is Impertinent, Immaterial, And Scandalous Should Be Stricken Under Rule 12(f).**

If the Court permits Plaintiff's claims, in the alternative Defendants request certain paragraphs be stricken as impertinent, immaterial and scandalous. Plaintiff's Complaint asserts allegations of wrongdoing regarding past suicides at George W. Hill Correctional Facility in

paragraphs 19-32 for the sole purpose of painting Defendants as cruel and immoral. (Document 1, pp. 16-18, ¶¶19-32). These statements are not pertinent, cause prejudice, and should be stricken as scandalous and impertinent.

>Federal Rule of Civil Procedure 12(f) provides, in relevant part:
>
>>Upon motion made by a party ... within 20 days after the service of the pleading upon the party ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed.R.Civ.P. 12(f). "Grounds for a motion to strike must be readily apparent from the face of the pleadings or from materials that may be judicially noticed." *Wailua Assocs. v. Aetna Cas. & Sur. Co.,* 183 F.R.D. 550, 554 (D.C.Haw. 1998) (granting a motion to strike when plaintiffs referred to defendants' conduct in an insurance dispute as "siege warfare.") "Immaterial matter is that which has no essential or important relationship to the claim for relief." *Delaware Health Care. Inc. v. MCD Holding Co.,* 893 F.Supp. 1279, 1291-92 (D.Del.1995), *citing* 5A C. Wright & A. Miller § 1382, at 706-07. "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.; Cech v. Crescent Hills Coal Co.,* 2002 U.S. Dist. LEXIS 15731, 15747, 2002 WL 31002883 (W.D.Pa.2002). There is considerable overlap between the concepts of "immaterial" and "impertinent" statements under Rule 12(f). *River Road Dev. Corp.,* 1990 U.S. Dist. LEXIS at 6221, 1990 WL 6092. " 'Scandalous matter' has been defined as 'that which improperly casts a derogatory light on someone, most typically on a party to the action.' " *Carone v. Whalen,* 121 F.R.D. 231, 233 (M.D.Pa.1988) (Conaboy, J.); 5 C. Wright & A. Miller § 1382, at 826. "Scandalous pleading" must " 'reflect cruelly' upon the defendant's moral character, use 'repulsive language' or 'detract from the dignity of the court.' " *Carone,* 121 F.R.D. at 233, *citing Skadegaard v. Farrell,* 578 F.Supp. 1209, 1221 (D.N.J.1984).

>Allegations of past suicides alludes to either improper or possibly criminal activity that

have no bearing on the current claims and should be stricken as scandalous and impertinent matter. A similar attempt at such an improper history was stricken under similar state law in the case of *Common Cause/Pennsylvania v. Com.,* 710 A.2d 108, 115 (Commw.1998) (Statements that set forth the history of lawmaking in Pennsylvania and cast a derogatory light on legislative and executive branch leadership was held as scandalous and stricken from the complaint.) In the *Common Cause/Pennsylvania* case, Plaintiff has stated in the complaint a detailed history of lawmaking in Pennsylvania, which cast the legislature in a bad light. Preliminary Objections were filed to strike these paragraphs. The Commonwealth Court, in holding that the historical narrative should be stricken, stated

> Rather than setting forth factual allegations relevant to the procedure by which HB 67 was considered and passed, Petitioners have chosen to include allegations regarding the procedures used by the Governor and the legislative leadership in enacting certain other pieces of legislation, not here before us. These allegations are immaterial to Petitioners' cause of action. Petitioners' introductory statement also contains statements which improperly cast a derogatory light on the legislative and executive branch leadership. Such scandalous statements have no place in a pleading.
>
> Accordingly, the Petitioner's introductory statement is stricken in its entirety from the petition for review.

*Id.* at 115. Our case is nearly identical situation as that in the *Common Cause/Pennsylvania* case. Plaintiff, for no reason relevant to the claims in the Amended Complaint, sets forth a history of past suicides, beginning as early as 2002, with many occurring over ten years ago or more, or when a different entity was operating the prison. (Document 1, pp. 16-18, ¶¶19-32).

Plaintiff makes no attempt to analogize this incident with these past incidents, but rather makes these allegations to suggest that this incident, and those past incidents, somehow infer

wrongdoing by the Defendants. These past incidents are irrelevant, prejudicial, and have no other purpose than to infer improper or illegal actions against the Defendants.

Therefore, Plaintiff's improperly pled history of past suicides which have no bearing or resemblance to any claim in the Complaint only serve to put the Defendants in a derogatory light and cause prejudice, and therefore should be stricken. (Document 1, pp. 16-18, ¶¶19-32). Therefore, these allegations should be stricken with prejudice.

## III.   CONCLUSION

Defendants Motion to Dismiss should be granted as the necessary elements of the "negligent suicide" claim do not appear in the Complaint. Therefore, the Complaint should be dismissed with prejudice. In the alternative, paragraphs 19-32 should be stricken as scandalous, impertinent matter under Rule 12(f).

Respectfully submitted:

**DiORIO & SERENI, LLP**

Date: April 28, 2022         **BY:**   /s/ *Robert M. DiOrio*
**ROBERT M. DIORIO, ESQ.**
Attorney ID No. 17838

/s/ *Matthew H. Fry*
**MATTHEW H. FRY, ESQ.**
Attorney ID No. 83131
21 West Front Street
P.O. Box 1789
Media, PA 19063
(610) 565-5700 (telephone)
(610) 891-0652 (facsimile)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ZAKIAH CHANTE FREEMAN** : <br> **ADMINISTRATRIX OF THE ESTATE** : <br> **OF ZAFIQ A. FREEMAN** : <br> : **CIVIL ACTION** <br> : <br> **v.** : **No. 22-1196** <br> : <br> **THE GEO GROUP, INC., ET. AL.** : <br> : <br> : | |

## CERTIFICATION

The parties, by and through their respective counsel, have conferred and had substantive communications with respect to the issues presented in this Motion to Dismiss and, despite these verbal communications, have been unable to resolve the issues presenting in the current Motion. Therefore, the filing of this Motion to Dismiss was necessary.

Respectfully submitted:

**DiORIO & SERENI, LLP**

Date: <u>April 28, 2022</u>        **BY:**    /s/ *Robert M. DiOrio*
                                              **ROBERT M. DIORIO, ESQ.**
                                              Attorney ID No. 17838

                                               /s/ *Matthew H. Fry*
                                              **MATTHEW H. FRY, ESQ.**
                                              Attorney ID No. 83131
                                              21 West Front Street
                                              P.O. Box 1789
                                              Media, PA 19063
                                              (610) 565-5700 (telephone)
                                              (610) 891-0652 (facsimile)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ZAKIAH CHANTE FREEMAN** : <br> **ADMINISTRATRIX OF THE ESTATE** : <br> **OF ZAFIQ A. FREEMAN** : <br> : **CIVIL ACTION** <br> : <br> **v.** : **No. 22-1196** <br> : <br> **THE GEO GROUP, INC., ET. AL.** : <br> : <br> : | |

**CERTIFICATE OF SERVICE**

    We, Robert M. DiOrio and Matthew H. Fry, attorneys for Defendant, hereby certify that a true and correct copy of the foregoing Motion to Dismiss was filed electronically via the Court's Electronic system on the date below and is available for viewing and download by all counsel of record.

David K. Inscho, Esquire<br>Kline & Specter, P.C.<br>1525 Locust Street<br>Philadelphia, PA 19102

Respectfully submitted:

**DiORIO & SERENI, LLP**

Date: <u>April 28, 2022</u>    **BY:**   /s/ *Robert M. DiOrio*
                                        **ROBERT M. DIORIO, ESQ.**
                                        Attorney ID No. 17838

                                        /s/ *Matthew H. Fry*
                                        **MATTHEW H. FRY, ESQ.**
                                        Attorney ID No. 83131
                                        21 West Front Street
                                        P.O. Box 1789
                                        Media, PA 19063
                                        (610) 565-5700 (telephone)
                                        (610) 891-0652 (facsimile)